UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JEAN EXANTUS,                          )
                                       )
            Petitioner                 )
                                       )        Civil Action No.
      v.                               )        05cv10700-DPW
                                       )
DEPARTMENT OF HOMELAND SECURITY,)
                                       )
            Respondent                 )


MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER CASE
TO FIRST CIRCUIT COURT OF APPEALS PURSUANT TO
SECTION 106(c) OF THE REAL ID ACT OF 2005

Respondent[1] moves to transfer this action to the First

Circuit Court of Appeals pursuant to the command of section

106(c) of the REAL ID Act of 2005, H.R. 1268, 109th Cong.

(2005)(enacted), Pub. L. No. 109-13, Div. B, 119 Stat. 231

("RIDA").  The RIDA was enacted into law on May 11, 2005.  See

Attachment A.

I.    THE COURT SHOULD TRANSFER THIS ACTION TO THE FIRST CIRCUIT
      COURT OF APPEALS AS DIRECTED BY RIDA SECTION 106(c).

      Through various sections of the RIDA Congress has amended

the judicial review provisions of the Immigration and Nationality

Act ("INA") to now explicitly provide that all review of removal

orders is exclusively in the appropriate United States Circuit

---

[1] The responsive official of the Department of Homeland Security
responsible for enforcement of petitioner's removal order in the
instant action is Bruce Chadbourne, Field Office Director for
Detention and Removal, Department of Homeland Security, Bureau of
Immigration and Customs Enforcement ("ICE") in Boston,
Massachusetts. See 28 U.S.C. § 517 (providing for the appearance
of the Department of Justice "to attend to the interests of the

Courts of Appeals, even for aliens who have criminally-based removal orders, and that no court has any jurisdiction to review such removal orders[2] other than as provided by statute at the circuit court of appeals.

As an immediate application of the RIDA judicial review amendments, Congress has additionally provided in section 106(c) of RIDA that for all habeas corpus actions challenging orders of removal that are pending on the date of RIDA enactment, "the district court shall transfer the case (or the part of the case that challenges the order of removal, deportation, or exclusion) to the court of appeals . . .".[3]  Petitioner's habeas case has

---

United States in a suit pending in a court of the United States").

[2] RIDA section 106(a)(1)(B) creates new INA section 242(a)(5), 8 U.S.C. § 1252(a)(5):

(5) EXCLUSIVE MEANS OF REVIEW- Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e). For purposes of this Act, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms `judicial review' and `jurisdiction to review' include habeas corpus review pursuant to section 2241 of title 28, United States Code, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

[3] 106(c) TRANSFER OF CASES.-
Transfer of Cases- If an alien's case, brought under section 2241 of title 28, United States Code, and challenging a final administrative order of removal, deportation, or exclusion, is pending in a district court on the date of the enactment of this

been pending in the District Court since April 8, 2005, and transfer to the First Circuit Court of Appeals is appropriate because proceedings before the Immigration Judge were completed in Boston, Massachusetts.[4] See Attachment B.

The directed transfer of pending habeas cases to the circuit court complements a concomitant RIDA amendment[5] explicitly providing for subject matter jurisdiction in the circuit courts for judicial review of criminally-based removal orders. Prior to the RIDA amendments, circuit courts had determined that the jurisdictional bar at 8 U.S.C. § 1252(a)(2)(C) for judicial review effectively kept criminally-based deportation and removal cases from being reviewed at the circuit except for threshold jurisdictional questions. See e.g. Sousa v. INS, 226 F.3d 28, 31 (1st Cir. 2000) ("INA section 242(a)(2)(C) is not a bar to our considering Sousa's claim that he is not removable as an aggravated felon.").

---

division, then the district court shall transfer the case (or the part of the case that challenges the order of removal, deportation, or exclusion) to the court of appeals for the circuit in which a petition for review could have been properly filed under section 242(b)(2) of the Immigration and Nationality Act (8 U.S.C. 1252), as amended by this section, or under section 309(c)(4)(D) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1101 note). The court of appeals shall treat the transferred case as if it had been filed pursuant to a petition for review under such section 242, except that subsection (b)(1) of such section shall not apply.

[4] See 8 U.S.C. § 1252(b)(2) (prescribing venue in review of a removal order, "[t]he petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings.").
[5] See n.5.

The result was that petitioners with such criminally-based removal orders sought habeas corpus review of their cases in the district court where possible, because it was held that the absence of an explicit reference to habeas corpus jurisdiction under 28 U.S.C. § 2241 in prior Congressional efforts to limit judicial review was ineffective to restrict such habeas corpus review.  See e.g. Goncalves v. Reno, et al., 144 F.3d 110, 120 (1st Cir. 1998), cert. denied 526 U.S. 1004, ("any repeal of the federal courts' historic habeas jurisdiction must be explicit and make express reference specifically to the statute granting jurisdiction."); Mahadeo v. Reno, et al., 226 F.3d 3, 10 (1st Cir. 2000) (pre-RIDA judicial review provisions for removal orders "lack the clear statement of the congressional intent necessary to eliminate habeas review.").  Also, the absence of any other forum for review of criminally-based removal orders was a factor in court determinations that pre-RIDA judicial review provisions did not repeal habeas corpus review of removal orders by implication.  INS v. St. Cyr, 533 U.S. 289, 314 (2001).

However, through RIDA Congress has at once now unambiguously indicated its intent to eliminate habeas corpus review of removal orders, see Argument, Part II, infra, and at the same time indicated its intent to provide judicial review for criminally-based orders in the circuit courts of appeals.  RIDA section 106(a)(1)(A)(iii) has now created a new section of the INA,

section 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D),[6] that explicitly provides for a review for criminally-based removal cases in the circuit court, viz., "review of constitutional claims or questions of law". Cf. Carranza v. INS, 277 F.3d 65, 71 (1st Cir. 2002) (federal courts "retain subject matter jurisdiction over habeas petitions brought by aliens facing removal to the extent those petitions are based on colorable claims of legal error, that is, colorable claims that an alien's statutory or constitutional rights have been violated.").[7]

Moreover, cases pending on the date of enactment of RIDA that are transferred to the court of appeals as if "filed pursuant to a petition for review under such section 242, except that subsection (b)(1) of such section shall not apply."[8]

---

[6] RIDA Section 106(a)(1)(A)(iii) creates new INA section 242(a)(2)(D):

JUDICIAL REVIEW OF CERTAIN LEGAL CLAIMS.-
Nothing in subparagraph (B) or (C) [i.e., INA sections 242(a)(2)(B) and (C), 8 U.S.C. §§ 1252(a)(2)(B) and (C)], or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

[7] See Conference Report, 151 Cong. Rec. H2813, 2873, 109th Cong., 1st Sess., available at 2005 WL 1025891 (May 3, 2005)("Under the amendments in section 106, all aliens will get review in the same forum -- the courts of appeal.").

[8] INA section 242(b)(1), 8 U.S.C. § 1252(b)(1), is the requirement that judicial review petitions to the circuit courts be filed within 30 days of the date of a final order of removal, and so habeas cases transferred to the circuit court under RIDA

Accordingly, this Court should transfer this action to the First Circuit Court of Appeals pursuant to the direction of RIDA section 106(c).

II.  THE DISTRICT COURT LACKS SUBJECT MATTER JURISDICTION OVER PETITIONER'S CLAIMS UNDER THE RIDA AMENDMENTS.

The RIDA's explicit elimination of subject matter jurisdiction, including habeas corpus jurisdiction under 28 U.S.C. § 2241,[9] in courts other than the circuit courts of appeal, in tandem with RIDA's explicit provision for "review of constitutional claims or questions of law" for all aliens upon properly filed petitions for review at the circuit court, is now congruent with the Supreme Court's recognition that "Congress could without raising any constitutional questions, provide an adequate substitute [to section 2241] through the courts of appeal." INS v. St. Cyr, 533 U.S. 289, 314 n.38 (2001). See also Swain v. Pressley, 430 U.S. 373, 381 (1977) ("[T]he substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention" does not violate the Suspension Clause.).[10]

---

section 106(c) are essentially forgiven what otherwise could be a statutory jurisdictional time bar in some cases.
[9] See n.2.

[10] Habeas challenges to pure detention -- that is, challenges only as to the fact of detention or continuing detention and not vicariously to the lawfulness of a removal order -- are not affected by the RIDA section 106 jurisdictional amendments. See Conference Report, 151 Cong. Rec. H2813, 2873, 109th Cong., 1st Sess., available at 2005 WL 1025891 (May 3, 2005)("Moreover, section 106 would not preclude habeas review over challenges to

Additionally, RIDA amends INA section 242(b)(9),[11] 8 U.S.C.
§ 1252(b)(9), and INA section 242(g),[12] 8 U.S.C. § 1252(b)(g), to
explicitly include 28 U.S.C. § 2241, inter alia, within the
express terms of those statutory jurisdictional review bars. The
sum and substance of these amendments is to make explicit that no
court other than the court of appeals as provided by statute now
has any subject matter jurisdiction respecting "all questions of

---

detention that are independent of challenges to removal
orders.").

[11] Amendments made by Section 106(a)(2) RIDA to INA section
242(b)(9):

242(b)(9) CONSOLIDATION OF QUESTIONS FOR JUDICIAL REVIEW.-
Judicial review of all questions of law and fact, including
interpretation and application of constitutional and statutory
provisions, arising from any action taken or proceeding brought
to remove an alien from the United States under this title shall
be available only in judicial review of a final order under this
section. *Except as otherwise provided in this section, no court
shall have jurisdiction, by habeas corpus under section 2241 of
title 28, United States Code, or any other habeas corpus
provision, by section 1361 or 1651 of such title, or by any other
provision of law (statutory or nonstatutory), to review such an
order or such questions of law or fact.*

(Amended language emphasized).

[12] Amendments made by Section 106(a)(3) RIDA to INA section
242(g):

242(g) EXCLUSIVE JURISDICTION.--Except as provided in this
section and notwithstanding any other provision of law *(statutory
or nonstatutory) including section 2241 of title 28, United
States Code, or any other habeas corpus provision, and sections
1361 and 1651 of such title,* no court shall have jurisdiction to
hear any cause or claim by or on behalf of any alien arising from
the decision or action by the Attorney General to commence
proceedings, adjudicate cases, or execute removal orders against
any alien under this Act.

law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States", and respecting "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this [INA]".  INA sections 242(b)(9) and 242(g), respectively, as amended by RIDA.

The effective date for these RIDA judicial review amendments provides that the provisions "shall apply to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of enactment of this division [The Real ID Act of 2005]."[13]

Accordingly, under the RIDA amendments the Court lacks subject matter jurisdiction over the petition, and this case should be transferred to the First Circuit Court of Appeals pursuant to the statutory command of section 106(c) of the RIDA.

---

(Amended language emphasized).

[13] RIDA section 106(b) provides for the effective dates of the RIDA section 106(a) amendments:

106(b) EFFECTIVE DATE.- The amendments made by subsection [RIDA 106] (a) shall take effect upon the date of enactment of this division and shall apply to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of enactment of this division.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  s/Frank Crowley
FRANK CROWLEY
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114
(617) 565-2415

## CERTIFICATE OF SERVICE

I hereby certify that I caused true copy of the above document to be served upon counsel for petitioner by mail on June 3, 2005.

s/Frank Crowley
FRANK CROWLEY
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114

**ATTACHMENT A**

Case 1:05-cv-10700-DPW    Document 6-2    Filed 06/03/2005    Page 2 of 28



President George W. Bush



Click to Print
this document

For Immediate Release
Office of the Press Secretary
May 11, 2005

### Statement on H.R. 1268, the "Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005"

On Wednesday, May 11 2005, the President signed into law:

H.R. 1268, the "Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005" which provides emergency supplemental FY 2005 appropriations for military operations, relief and reconstruction, and related activities critical to building stable democracies in Iraq and Afghanistan. This Act also provides funds to assist those suffered in the aftermath of the tsunami in the Indian Ocean in December 2004.

### # # #

**Return to this article at:**
http://www.whitehouse.gov/news/releases/2005/05/20050511-5.html

Click to Print
this document





President George W. Bush

Click to Print
this document


For Immediate Release
Office of the Press Secretary
May 11, 2005

# President's Statement on H.R. 1268

Today, I have signed into law H.R. 1268, the "Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005" (the "Act"). The Act provides funds for ongoing military and intelligence operations in Iraq and Afghanistan and selected other international activities, including tsunami relief and reconstruction. The Act supports new benefits for service members who have suffered traumatic injury and for survivors of fallen service members. The Act also provides additional border enforcement resources, which will strengthen the Nation's ability to prevent foreign terrorists from operating in the United States.

The executive branch shall construe subsection 1025(d) of the Act, which purports to determine the command relationships among certain elements of the U.S. Navy forces, as advisory, as any other construction would conflict with the President's constitutional authority as Commander in Chief.

Provisions of the Act, such as sections 2104 and 6024, purport to require congressional committee approval prior to certain obligations or expenditures of funds appropriated by the Act. The executive branch shall construe such provisions to require only prior notification to congressional committees, as any other construction would be contrary to the constitutional principles set forth by the Supreme Court of the United States in 1983 in INS v. Chadha.

Section 6025 purports to regulate the content of the President's annual budget submission, which is a proposal for enactment of legislation to appropriate funds. In addition, section 301 calls for submission of legislative recommendations by an executive branch official to the Congress. The executive branch shall construe these and any other similar provisions in a manner consistent with the Constitution's commitment to the President of exclusive authority to supervise the unitary executive branch and to recommend for the consideration of the Congress such measures as the President shall judge necessary and expedient.

Several provisions of the Act, including sections 6041, 6042, 6043, 6052, 6053, 6069, 6070, 6071, and 6072 make specified changes in statements of managers of the House Senate conference committees that accompanied various bills reported from conference that ultimately became laws. As with other committee materials, statements of managers accompanying a conference report do not have the force of law. Accordingly, although changes to these statements are directed by the terms of the Act, the statements themselves are not legally binding.

GEORGE W. BUSH

THE WHITE HOUSE,

May 11, 2005.

### #

**Return to this article at:**
http://www.whitehouse.gov/news/releases/2005/05/20050511-6.html

Click to Print
this document

DIVISION B--REAL ID ACT OF 2005

SECTION 1. SHORT TITLE.

This division may be cited as the ``REAL ID Act of 2005''.

TITLE I--AMENDMENTS TO FEDERAL LAWS TO PROTECT AGAINST TERRORIST ENTRY

SEC. 101. PREVENTING TERRORISTS FROM OBTAINING RELIEF FROM REMOVAL.

(a) *Conditions for Granting Asylum.*--Section 208(b)(1) of the Immigration and Nationality Act (8 U.S.C. 1158(b)(1)) is amended--

(1) by striking ``The Attorney General'' the first place such term appears and inserting the following:

``(A) **ELIGIBILITY.**--The Secretary of Homeland Security or the Attorney General'';

(2) by striking ``the Attorney General'' the second and third places such term appears and inserting ``the Secretary of Homeland Security or the Attorney General''; and

(3) by adding at the end the following:

``(B) **BURDEN OF PROOF.**--

``(i) **IN GENERAL.**--The burden of proof is on the applicant to establish that the applicant is a refugee, within the meaning of section 101(a)(42)(A). To establish that the applicant is a refugee within the meaning of such section, the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant.

``(ii) **SUSTAINING BURDEN.**--The testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee. In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record. Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence.

``(iii) **CREDIBILITY DETERMINATION.**--Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent

plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.".

(b) *Exceptions to Eligibility for Asylum.*--Section 208(b)(2)(A)(v) of the Immigration and Nationality Act (8 U.S.C. 1158(b)(2)(A)(v)) is amended--

(1) by striking ``inadmissible under'' each place such term appears and inserting ``described in''; and

(2) by striking ``removable under''.

(c) *Withholding of Removal.*--Section 241(b)(3) of the Immigration and Nationality Act (8 U.S.C. 1231(b)(3)) is amended by adding at the end the following:

``(C) SUSTAINING BURDEN OF PROOF; CREDIBILITY DETERMINATIONS.--In determining whether an alien has demonstrated that the alien's life or freedom would be threatened for a reason described in subparagraph (A), the trier of fact shall determine whether the alien has sustained the alien's burden of proof, and shall make credibility determinations, in the manner described in clauses (ii) and (iii) of section 208(b)(1)(B).".

(d) *Other Requests for Relief From Removal.*--Section 240(c) of the Immigration and Nationality Act (8 U.S.C. 1230(c)) is amended--

(1) by redesignating paragraphs (4), (5), and (6) as paragraphs (5), (6), and (7), respectively; and

(2) by inserting after paragraph (3) the following:

``(4) APPLICATIONS FOR RELIEF FROM REMOVAL.--

``(A) IN GENERAL.--An alien applying for relief or protection from removal has the burden of proof to establish that the alien--

``(i) satisfies the applicable eligibility requirements; and

``(ii) with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion.

``(B) SUSTAINING BURDEN.--The applicant must comply with the applicable requirements to submit information or documentation in support of the applicant's application for relief or protection as provided by law or by regulation or in the instructions for the application form. In evaluating the testimony of the applicant or other witness in support of the application, the immigration judge will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof. In determining whether the applicant has met such burden, the immigration judge shall weigh the credible testimony along with other evidence of record. Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.

``(C) CREDIBILITY DETERMINATION.--Considering the totality of the circumstances, and all relevant factors, the immigration judge may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a rebuttable presumption of credibility on appeal.''.

(e) *Standard of Review for Orders of Removal*.--Section 242(b)(4) of the Immigration and Nationality Act (8 U.S.C. 1252(b)(4)) is amended by adding at the end, after subparagraph (D), the following: ``No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence, as described in section 208(b)(1)(B), 240(c)(4)(B), or 241(b)(3)(C), unless the court finds, pursuant to section 242(b)(4)(B), that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.''.

(f) *Clarification of Discretion*.--Section 242(a)(2)(B) of the Immigration and Nationality Act (8 U.S.C. 1252(a)(2)(B)) is amended--

(1) by inserting ``or the Secretary of Homeland Security'' after ``Attorney General'' each place such term appears; and

(2) in the matter preceding clause (i), by inserting ``and regardless of whether the judgment, decision, or action is made in removal proceedings,'' after ``other provision of law,''.

(g) *Removal of Caps.--*

(1) ASYLEES.--Section 209 of the Immigration and Nationality Act (8 U.S.C. 1159) is amended--

(A) in subsection (a)(1)--

(i) by striking ``Service'' and inserting ``Department of Homeland Security''; and

(ii) by striking ``Attorney General'' each place such term appears and inserting ``Secretary of Homeland Security or the Attorney General'';

(B) in subsection (b)--

(i) by striking ``Not more'' and all that follows through ``asylum who--'' and inserting ``The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as

[Page: H2832]   *GPO's PDF*

the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who--''; and

(ii) in the matter following paragraph (5), by striking ``Attorney General'' and inserting ``Secretary of Homeland Security or the Attorney General''; and

(C) in subsection (c), by striking ``Attorney General'' and inserting ``Secretary of Homeland Security or the Attorney General''.

(2) PERSONS RESISTING COERCIVE POPULATION CONTROL METHODS.--Section 207(a) of the Immigration and Nationality Act (8 U.S.C. 1157(a)) is amended by striking paragraph (5).

(h) *Effective Dates.--*

(1) The amendments made by paragraphs (1) and (2) of subsection (a) shall take effect as if enacted on March 1, 2003.

(2) The amendments made by subsections (a)(3), (b), (c), and (d) shall take effect on the date of the enactment of this division and shall apply to applications for asylum, withholding, or other relief from removal made on or after such date.

(3) The amendment made by subsection (e) shall take effect on the date of the enactment of this division and shall apply to all cases in which the final administrative removal order is or was issued before, on, or after such date.

(4) The amendments made by subsection (f) shall take effect on the date of the enactment of this division and shall apply to all cases pending before any court on or after such date.

(5) The amendments made by subsection (g) shall take effect on the date of the enactment of this division.

(i) *Repeal.*--Section 5403 of the Intelligence Reform and Terrorism Prevention Act of 2004 (Public Law 108-458) is repealed.

## SEC. 102. WAIVER OF LEGAL REQUIREMENTS NECESSARY FOR IMPROVEMENT OF BARRIERS AT BORDERS; FEDERAL COURT REVIEW.

Section 102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1103 note) is amended to read as follows:

``(c) *Waiver.*--

``(1) IN GENERAL.--Notwithstanding any other provision of law, the Secretary of Homeland Security shall have the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section. Any such decision by the Secretary shall be effective upon being published in the Federal Register.

``(2) FEDERAL COURT REVIEW.--

``(A) IN GENERAL.--The district courts of the United States shall have exclusive jurisdiction to hear all causes or claims arising from any action undertaken, or any decision made, by the Secretary of Homeland Security pursuant to paragraph (1). A cause of action or claim may only be brought alleging a violation of the Constitution of the United States. The court shall not have jurisdiction to hear any claim not specified in this subparagraph.

``(B) TIME FOR FILING OF COMPLAINT.--Any cause or claim brought pursuant to subparagraph (A) shall be filed not later than 60 days after the date of the action or decision made by the Secretary of Homeland Security. A claim shall be barred unless it is filed within the time specified.

``(C) ABILITY TO SEEK APPELLATE REVIEW.--An interlocutory or final judgment, decree, or order of the district court may be reviewed only upon petition for a writ of certiorari to the Supreme Court of the United States.''.

## SEC. 103. INADMISSIBILITY DUE TO TERRORIST AND TERRORIST-RELATED ACTIVITIES.

(a) *In General*.--So much of section 212(a)(3)(B)(i) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(i)) as precedes the final sentence is amended to read as follows:

``(i) IN GENERAL.--Any alien who--

``(I) has engaged in a terrorist activity;

``(II) a consular officer, the Attorney General, or the Secretary of Homeland Security knows, or has reasonable ground to believe, is engaged in or is likely to engage after entry in any terrorist activity (as defined in clause (iv));

``(III) has, under circumstances indicating an intention to cause death or serious bodily harm, incited terrorist activity;

``(IV) is a representative (as defined in clause (v)) of--

``(aa) a terrorist organization (as defined in clause (vi)); or

``(bb) a political, social, or other group that endorses or espouses terrorist activity;

``(V) is a member of a terrorist organization described in subclause (I) or (II) of clause (vi);

``(VI) is a member of a terrorist organization described in clause (vi)(III), unless the alien can demonstrate by clear and convincing evidence that the alien did not know, and should not reasonably have known, that the organization was a terrorist organization;

``(VII) endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization;

``(VIII) has received military-type training (as defined in section 2339D(c)(1) of title 18, United States Code) from or on behalf of any organization that, at the time the training was received, was a terrorist organization (as defined in clause (vi)); or

``(IX) is the spouse or child of an alien who is inadmissible under this subparagraph, if the activity causing the alien to be found inadmissible occurred within the last 5 years, is inadmissible.''.

(b) *Engage in Terrorist Activity Defined*.--Section 212(a)(3)(B)(iv) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(iv)) is amended to read as follows:

``(iv) ENGAGE IN TERRORIST ACTIVITY DEFINED.--As used in this Act, the term `engage in terrorist activity' means, in an individual capacity or as a member of an organization--

``(I) to commit or to incite to commit, under circumstances indicating an intention to cause death or serious bodily injury, a terrorist activity;

``(II) to prepare or plan a terrorist activity;

``(III) to gather information on potential targets for terrorist activity;

``(IV) to solicit funds or other things of value for--

``(aa) a terrorist activity;

``(bb) a terrorist organization described in clause (vi)(I) or (vi)(II); or

``(cc) a terrorist organization described in clause (vi)(III), unless the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization;

``(V) to solicit any individual--

``(aa) to engage in conduct otherwise described in this subsection;

``(bb) for membership in a terrorist organization described in clause (vi)(I) or (vi)(II); or

``(cc) for membership in a terrorist organization described in clause (vi)(III) unless the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization; or

``(VI) to commit an act that the actor knows, or reasonably should know, affords material support, including a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training--

``(aa) for the commission of a terrorist activity;

``(bb) to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity;

``(cc) to a terrorist organization described in subclause (I) or (II) of clause (vi) or to any member of such an organization; or

``(dd) to a terrorist organization described in clause (vi)(III), or to any member of such an organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and should not reasonably have known, that the organization was a terrorist organization.''.

(c) *Terrorist Organization Defined*.--Section 212(a)(3)(B)(vi) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(vi)) is amended to read as follows:

``(vi) **TERRORIST ORGANIZATION DEFINED**.--As used in this section, the term `terrorist organization' means an organization--

``(I) designated under section 219;

``(II) otherwise designated, upon publication in the Federal Register, by the Secretary of State in consultation with or upon the request of the Attorney General or the Secretary of Homeland Security, as a terrorist organization, after finding that the organization engages in the activities described in subclauses (I) through (VI) of clause (iv); or

``(III) that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv).''.

(d) *Effective Date*.--The amendments made by this section shall take effect on the date of the enactment of this division, and these amendments, and section 212(a)(3)(B) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)), as amended by this section, shall apply to--

(1) removal proceedings instituted before, on, or after the date of the enactment of this division; and

(2) acts and conditions constituting a ground for inadmissibility, excludability, deportation, or removal occurring or existing before, on, or after such date.

## SEC. 104. WAIVER FOR CERTAIN GROUNDS OF INADMISSIBILITY.

Section 212(d)(3) of the Immigration and Nationality Act (8 U.S.C. 1182(d)(3)) is amended--

(1) by striking ``(3)'' and inserting ``(3)(A)'';

(2) by striking ``alien (A)'' and inserting ``alien (i)'';

(3) by striking ``or (B)'' and inserting ``or (ii)''; and

(4) by adding at the end the following:

``(B)(i) The Secretary of State, after consultation with the Attorney General and the Secretary of Homeland Security, or the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may conclude in such Secretary's sole unreviewable discretion that subsection (a)(3)(B)(i)(IV)(bb) or (a)(3)(B)(i)(VII) shall not apply to an alien, that subsection (a)(3)(B)(iv)(VI) shall not

apply with respect to any material support an alien afforded to an organization or individual that has engaged in a terrorist activity, or that subsection (a)(3)(B)(vi)(III) shall not apply to a group solely by virtue of having a subgroup within the scope of that subsection. The Secretary of State may not, however, exercise discretion under this clause with respect to an alien once removal proceedings against the alien are instituted under section 240.

``(ii) Not later than 90 days after the end of each fiscal year, the Secretary of State and the Secretary of Homeland Security shall each provide to the Committees on the Judiciary of the House of Representatives and of the Senate, the Committee on International Relations of the House of Representatives, the Committee on Foreign Relations of the Senate, and the Committee on Homeland Security of the House of Representatives a report on the aliens to whom such Secretary has applied clause (i). Within one

[Page: H2833]  *GPO's PDF*

week of applying clause (i) to a group, the Secretary of State or the Secretary of Homeland Security shall provide a report to such Committees.''.

## SEC. 105. REMOVAL OF TERRORISTS.

(a) *In General.--*

(1) IN GENERAL.--Section 237(a)(4)(B) of the Immigration and Nationality Act (8 U.S.C. 1227(a)(4)(B)) is amended to read as follows:

``(B) TERRORIST ACTIVITIES.--Any alien who is described in subparagraph (B) or (F) of section 212(a)(3) is deportable.''.

(2) EFFECTIVE DATE.--The amendment made by paragraph (1) shall take effect on the date of the enactment of this division, and the amendment, and section 237(a)(4)(B) of the Immigration and Nationality Act (8 U.S.C. 1227(a)(4)(B)), as amended by such paragraph, shall apply to--

(A) removal proceedings instituted before, on, or after the date of the enactment of this division; and

(B) acts and conditions constituting a ground for inadmissibility, excludability, deportation, or removal occurring or existing before, on, or after such date.

(b) *Repeal.--*Effective as of the date of the enactment of the Intelligence Reform and Terrorism Prevention Act of 2004 (Public Law 108-458), section 5402 of such Act is repealed, and the Immigration and Nationality Act shall be applied as if such section had not been enacted.

## SEC. 106. JUDICIAL REVIEW OF ORDERS OF REMOVAL.

(a) *In General*.--Section 242 of the Immigration and Nationality Act (8 U.S.C. 1252) is amended--

(1) in subsection (a)--

(A) in paragraph (2)--

(i)     in subparagraph (A), by inserting ``(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title'' after ``Notwithstanding any other provision of law'';

(ii)    (ii) in each of subparagraphs (B) and (C), by inserting ``(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D)'' after ``Notwithstanding any other provision of law''; and

(iii) by adding at the end the following:

``(D) JUDICIAL REVIEW OF CERTAIN LEGAL CLAIMS.--Nothing in subparagraph (B) or (C), or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.''; and

(B) by adding at the end the following:

``(4) CLAIMS UNDER THE UNITED NATIONS CONVENTION.--
Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e).

``(5) EXCLUSIVE MEANS OF REVIEW.--Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act, except as provided in subsection (e). For purposes of this Act, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms 'judicial review' and 'jurisdiction to review' include habeas corpus review pursuant to section 2241 of title 28, United States Code, or any other habeas corpus

provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).'';

(2) in subsection (b)(9), by adding at the end the following: ``Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28, United States Code, or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.''; and

(3) in subsection (g), by inserting ``(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title'' after ``notwithstanding any other provision of law''.

(b) *Effective Date*.--The amendments made by subsection (a) shall take effect upon the date of the enactment of this division and shall apply to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment of this division.

(c) *Transfer of Cases*.--If an alien's case, brought under section 2241 of title 28, United States Code, and challenging a final administrative order of removal, deportation, or exclusion, is pending in a district court on the date of the enactment of this division, then the district court shall transfer the case (or the part of the case that challenges the order of removal, deportation, or exclusion) to the court of appeals for the circuit in which a petition for review could have been properly filed under section 242(b)(2) of the Immigration and Nationality Act (8 U.S.C. 1252), as amended by this section, or under section 309(c)(4)(D) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1101 note). The court of appeals shall treat the transferred case as if it had been filed pursuant to a petition for review under such section 242, except that subsection (b)(1) of such section shall not apply.

(d) *Transitional Rule Cases*.--A petition for review filed under former section 106(a) of the Immigration and Nationality Act (as in effect before its repeal by section 306(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1252 note)) shall be treated as if it had been filed as a petition for review under section 242 of the Immigration and Nationality Act (8 U.S.C. 1252), as amended by this section. Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, such petition for review shall be the sole and exclusive means for judicial review of an order of deportation or exclusion.

## TITLE II—IMPROVED SECURITY FOR DRIVERS' LICENSES AND PERSONAL IDENTIFICATION CARDS

### SEC. 201. DEFINITIONS.

In this title, the following definitions apply:

(1) **DRIVER'S LICENSE**.--The term ``driver's license'' means a motor vehicle operator's license, as defined in section 30301 of title 49, United States Code.

(2) **IDENTIFICATION CARD**.--The term ``identification card'' means a personal identification card, as defined in section 1028(d) of title 18, United States Code, issued by a State.

(3) **OFFICIAL PURPOSE**.--The term ``official purpose'' includes but is not limited to accessing Federal facilities, boarding federally regulated commercial aircraft, entering nuclear power plants, and any other purposes that the Secretary shall determine.

(4) **SECRETARY**.--The term ``Secretary'' means the Secretary of Homeland Security.

(5) **STATE**.--The term ``State'' means a State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, Guam, American Samoa, the Northern Mariana Islands, the Trust Territory of the Pacific Islands, and any other territory or possession of the United States.

## SEC. 202. MINIMUM DOCUMENT REQUIREMENTS AND ISSUANCE STANDARDS FOR FEDERAL RECOGNITION.

(a) *Minimum Standards for Federal Use*.--

(1) **IN GENERAL**.--Beginning 3 years after the date of the enactment of this division, a Federal agency may not accept, for any official purpose, a driver's license or identification card issued by a State to any person unless the State is meeting the requirements of this section.

(2) **STATE CERTIFICATIONS**.--The Secretary shall determine whether a State is meeting the requirements of this section based on certifications made by the State to the Secretary. Such certifications shall be made at such times and in such manner as the Secretary, in consultation with the Secretary of Transportation, may prescribe by regulation.

(b) *Minimum Document Requirements*.--To meet the requirements of this section, a State shall include, at a minimum, the following information and features on each driver's license and identification card issued to a person by the State:

(1) The person's full legal name.

(2) The person's date of birth.

(3) The person's gender.

(4) The person's driver's license or identification card number.

(5) A digital photograph of the person.

(6) The person's address of principle residence.

(7) The person's signature.

(8) Physical security features designed to prevent tampering, counterfeiting, or duplication of the document for fraudulent purposes.

(9) A common machine-readable technology, with defined minimum data elements.

(c) *Minimum Issuance Standards.--*

(1) **IN GENERAL.**--To meet the requirements of this section, a State shall require, at a minimum, presentation and verification of the following information before issuing a driver's license or identification card to a person: ·

(A) A photo identity document, except that a non-photo identity document is acceptable if it includes both the person's full legal name and date of birth.

(B) Documentation showing the person's date of birth.

(C) Proof of the person's social security account number or verification that the person is not eligible for a social security account number.

(D) Documentation showing the person's name and address of principal residence.

(2) **SPECIAL REQUIREMENTS.**--

(A) **IN GENERAL.**--To meet the requirements of this section, a State shall comply with the minimum standards of this paragraph.

(B) **EVIDENCE OF LAWFUL STATUS.**--A State shall require, before issuing a driver's license or identification card to a person, valid documentary evidence that the person--

(i) is a citizen or national of the United States;

(ii) is an alien lawfully admitted for permanent or temporary residence in the United States;

(iii) has conditional permanent resident status in the United States;

(iv) has an approved application for asylum in the United States or has entered into the United States in refugee status;

(v) has a valid, unexpired nonimmigrant visa or nonimmigrant visa status for entry into the United States;

(vi) has a pending application for asylum in the United States;

[Page: H2834]  *GPO's PDF*

(vii) has a pending or approved application for temporary protected status in the United States;

(viii) has approved deferred action status; or

(ix) has a pending application for adjustment of status to that of an alien lawfully admitted for permanent residence in the United States or conditional permanent resident status in the United States.

(C) **TEMPORARY DRIVERS' LICENSES AND IDENTIFICATION CARDS.--**

(i) **IN GENERAL.--**If a person presents evidence under any of clauses (v) through (ix) of subparagraph (B), the State may only issue a temporary driver's license or temporary identification card to the person.

(ii) **EXPIRATION DATE.--**A temporary driver's license or temporary identification card issued pursuant to this subparagraph shall be valid only during the period of time of the applicant's authorized stay in the United States or, if there is no definite end to the period of authorized stay, a period of one year.

(iii) **DISPLAY OF EXPIRATION DATE.--**A temporary driver's license or temporary identification card issued pursuant to this subparagraph shall clearly indicate that it is temporary and shall state the date on which it expires.

(iv) **RENEWAL.--**A temporary driver's license or temporary identification card issued pursuant to this subparagraph may be renewed only upon presentation of valid documentary evidence that the status by which the applicant qualified for the temporary driver's license or temporary identification card has been extended by the Secretary of Homeland Security.

(3) **VERIFICATION OF DOCUMENTS.--**To meet the requirements of this section, a State shall implement the following procedures:

(A) Before issuing a driver's license or identification card to a person, the State shall verify, with the issuing agency, the issuance, validity, and completeness of each document required to be presented by the person under paragraph (1) or (2).

(B) The State shall not accept any foreign document, other than an official passport, to satisfy a requirement of paragraph (1) or (2).

(C) Not later than September 11, 2005, the State shall enter into a memorandum of understanding with the Secretary of Homeland Security to routinely utilize the automated system known as Systematic Alien Verification for Entitlements, as provided for by section 404 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (110 Stat. 3009-664), to verify the legal presence status of a person, other than a United States citizen, applying for a driver's license or identification card.

(d) *Other Requirements.*--To meet the requirements of this section, a State shall adopt the following practices in the issuance of drivers' licenses and identification cards:

(1) Employ technology to capture digital images of identity source documents so that the images can be retained in electronic storage in a transferable format.

(2) Retain paper copies of source documents for a minimum of 7 years or images of source documents presented for a minimum of 10 years.

(3) Subject each person applying for a driver's license or identification card to mandatory facial image capture.

(4) Establish an effective procedure to confirm or verify a renewing applicant's information.

(5) Confirm with the Social Security Administration a social security account number presented by a person using the full social security account number. In the event that a social security account number is already registered to or associated with another person to which any State has issued a driver's license or identification card, the State shall resolve the discrepancy and take appropriate action.

(6) Refuse to issue a driver's license or identification card to a person holding a driver's license issued by another State without confirmation that the person is terminating or has terminated the driver's license.

(7) Ensure the physical security of locations where drivers' licenses and identification cards are produced and the security of document materials and papers from which drivers' licenses and identification cards are produced.

(8) Subject all persons authorized to manufacture or produce drivers' licenses and identification cards to appropriate security clearance requirements.

(9) Establish fraudulent document recognition training programs for appropriate employees engaged in the issuance of drivers' licenses and identification cards.

(10) Limit the period of validity of all driver's licenses and identification cards that are not temporary to a period that does not exceed 8 years.

(11) In any case in which the State issues a driver's license or identification card that does not satisfy the requirements of this section, ensure that such license or identification card--

(A) clearly states on its face that it may not be accepted by any Federal agency for federal identification or any other official purpose; and

(B) uses a unique design or color indicator to alert Federal agency and other law enforcement personnel that it may not be accepted for any such purpose.

(12) Provide electronic access to all other States to information contained in the motor vehicle database of the State.

(13) Maintain a State motor vehicle database that contains, at a minimum--

(A) all data fields printed on drivers' licenses and identification cards issued by the State; and

(B) motor vehicle drivers' histories, including motor vehicle violations, suspensions, and points on licenses.

## SEC. 203. TRAFFICKING IN AUTHENTICATION FEATURES FOR USE IN FALSE IDENTIFICATION DOCUMENTS.

(a) *Criminal Penalty.*--Section 1028(a)(8) of title 18, United States Code, is amended by striking ``false authentication features'' and inserting ``false or actual authentication features''.

(b) *Use of False Driver's License at Airports.*--

(1) IN GENERAL.--The Secretary shall enter, into the appropriate aviation security screening database, appropriate information regarding any person convicted of using a false driver's license at an airport (as such term is defined in section 40102 of title 49, United States Code).

(2) FALSE DEFINED.--In this subsection, the term ``false'' has the same meaning such term has under section 1028(d) of title 18, United States Code.

## SEC. 204. GRANTS TO STATES.

(a) *In General.*--The Secretary may make grants to a State to assist the State in conforming to the minimum standards set forth in this title.

(b) *Authorization of Appropriations.*--There are authorized to be appropriated to the Secretary for each of the fiscal years 2005 through 2009 such sums as may be necessary to carry out this title.

## SEC. 205. AUTHORITY.

(a) *Participation of Secretary of Transportation and States*.--All authority to issue regulations, set standards, and issue grants under this title shall be carried out by the Secretary, in consultation with the Secretary of Transportation and the States.

(b) *Extensions of Deadlines*.--The Secretary may grant to a State an extension of time to meet the requirements of section 202(a)(1) if the State provides adequate justification for noncompliance.

## SEC. 206. REPEAL.

Section 7212 of the Intelligence Reform and Terrorism Prevention Act of 2004 (Public Law 108-458) is repealed.

## SEC. 207. LIMITATION ON STATUTORY CONSTRUCTION.

Nothing in this title shall be construed to affect the authorities or responsibilities of the Secretary of Transportation or the States under chapter 303 of title 49, United States Code.

## TITLE III--BORDER INFRASTRUCTURE AND TECHNOLOGY INTEGRATION

## SEC. 301. VULNERABILITY AND THREAT ASSESSMENT.

(a) *Study*.--The Under Secretary of Homeland Security for Border and Transportation Security, in consultation with the Under Secretary of Homeland Security for Science and Technology and the Under Secretary of Homeland Security for Information Analysis and Infrastructure Protection, shall study the technology, equipment, and personnel needed to address security vulnerabilities within the United States for each field office of the Bureau of Customs and Border Protection that has responsibility for any portion of the United States borders with Canada and Mexico. The Under Secretary shall conduct follow-up studies at least once every 5 years.

(b) *Report to Congress*.--The Under Secretary shall submit a report to Congress on the Under Secretary's findings and conclusions from each study conducted under subsection (a) together with legislative recommendations, as appropriate, for addressing any security vulnerabilities found by the study.

(c) *Authorization of Appropriations*.--There are authorized to be appropriated to the Department of Homeland Security Directorate of Border and Transportation Security such sums as may be necessary for fiscal years 2006 through 2011 to carry out any such recommendations from the first study conducted under subsection (a).

## SEC. 302. USE OF GROUND SURVEILLANCE TECHNOLOGIES FOR BORDER SECURITY.

(a) *Pilot Program.*--Not later than 180 days after the date of the enactment of this division, the Under Secretary of Homeland Security for Science and Technology, in consultation with the Under Secretary of Homeland Security for Border and Transportation Security, the Under Secretary of Homeland Security for Information Analysis and Infrastructure Protection, and the Secretary of Defense, shall develop a pilot program to utilize, or increase the utilization of, ground surveillance technologies to enhance the border security of the United States. In developing the program, the Under Secretary shall--

(1) consider various current and proposed ground surveillance technologies that could be utilized to enhance the border security of the United States;

(2) assess the threats to the border security of the United States that could be addressed by the utilization of such technologies; and

(3) assess the feasibility and advisability of utilizing such technologies to address such threats, including an assessment of the technologies considered best suited to address such threats.

(b) *Additional Requirements.*--

(1) **IN GENERAL.**--The pilot program shall include the utilization of a variety of ground surveillance technologies in a variety of topographies and areas (including both populated and unpopulated areas) on both the northern and southern borders of the United States in order to evaluate, for a range of circumstances--

(A) the significance of previous experiences with such technologies in homeland security or critical infrastructure protection for the utilization of such technologies for border security;

(B) the cost, utility, and effectiveness of such technologies for border security; and

(C) liability, safety, and privacy concerns relating to the utilization of such technologies for border security.

(2) **TECHNOLOGIES.**--The ground surveillance technologies utilized in the pilot program shall include the following:

(A) Video camera technology.

(B) Sensor technology.

(C) Motion detection technology.

[Page: H2835]  *GPO's PDF*

(c) *Implementation.*--The Under Secretary of Homeland Security for Border and Transportation Security shall implement the pilot program developed under this section.

(d) *Report.*--Not later than 1 year after implementing the pilot program under subsection (a), the Under Secretary shall submit a report on the program to the Senate Committee on Commerce, Science, and Transportation, the House of Representatives Committee on Science, the House of Representatives Committee on Homeland Security, and the House of Representatives Committee on the Judiciary. The Under Secretary shall include in the report a description of the program together with such recommendations as the Under Secretary finds appropriate, including recommendations for terminating the program, making the program permanent, or enhancing the program.

## SEC. 303. ENHANCEMENT OF COMMUNICATIONS INTEGRATION AND INFORMATION SHARING ON BORDER SECURITY.

(a) *In General.*--Not later than 180 days after the date of the enactment of this division, the Secretary of Homeland Security, acting through the Under Secretary of Homeland Security for Border and Transportation Security, in consultation with the Under Secretary of Homeland Security for Science and Technology, the Under Secretary of Homeland Security for Information Analysis and Infrastructure Protection, the Assistant Secretary of Commerce for Communications and Information, and other appropriate Federal, State, local, and tribal agencies, shall develop and implement a plan--

(1) to improve the communications systems of the departments and agencies of the Federal Government in order to facilitate the integration of communications among the departments and agencies of the Federal Government and State, local government agencies, and Indian tribal agencies on matters relating to border security; and

(2) to enhance information sharing among the departments and agencies of the Federal Government, State and local government agencies, and Indian tribal agencies on such matters.

(b) *Report.*--Not later than 1 year after implementing the plan under subsection (a), the Secretary shall submit a copy of the plan and a report on the plan, including any recommendations the Secretary finds appropriate, to the Senate Committee on Commerce, Science, and Transportation, the House of Representatives Committee on Science, the House of Representatives Committee on Homeland Security, and the House of Representatives Committee on the Judiciary.

## TITLE IV--TEMPORARY WORKERS

## SEC. 401. SHORT TITLE.

This title may be cited as the ``Save Our Small and Seasonal Businesses Act of 2005".

## SEC. 402. NUMERICAL LIMITATIONS ON H-2B WORKERS.

(a) *In General*.--Section 214(g) of the Immigration and Nationality Act (8 U.S.C. 1184(g)) is amended by adding at the end the following:

``(9)(A) Subject to subparagraphs (B) and (C), an alien who has already been counted toward the numerical limitations of paragraph (1)(B) during any 1 of the 3 fiscal years prior to the fiscal year of the approved start date of a petition for a nonimmigrant worker described in section 101(a)(15)(H)(ii)(b) shall not be counted toward such limitation for the fiscal year in which the petition is approved. Such an alien shall be considered a returning worker.

``(B) A petition referred to in subparagraph (A) shall include, with respect to a returning worker--

``(i) all information and evidence that the Secretary of Homeland Security determines is required to support a petition for status under section 101(a)(15)(H)(ii)(b);

``(ii) the full name of the alien; and

``(iii) a certification to the Department of Homeland Security that the alien is a returning worker.

``(C) An H-2B visa or grant of nonimmigrant status for a returning worker shall be approved only if the alien is confirmed to be a returning worker by--

``(i) the Department of State; or

``(ii) if the alien is visa exempt or seeking to change to status under section 101(a)(15)(H)(ii)(b), the Department of Homeland Security.''.

(b) *Effective Date*.--

(1) **IN GENERAL**.--The amendment in subsection (a) shall take effect as if enacted on October 1, 2004, and shall expire on October 1, 2006.

(2) **IMPLEMENTATION**.--Not later than 14 days after the date of the enactment of this Act, the Secretary of Homeland Security shall begin accepting and processing petitions filed on behalf of aliens described in section 101(a)(15)(H)(ii)(b) of the Immigration and Nationality Act, in a manner consistent with this section and the amendments made by this section. Notwithstanding section 214(g)(9)(B) of such Act, as added by subsection (a), the Secretary of Homeland Security shall allocate additional numbers for fiscal year 2005 based on statistical estimates and projections derived from Department of State data.

## SEC. 403. FRAUD PREVENTION AND DETECTION FEE.

(a) *Imposition of Fee.*--Section 214(c) of the Immigration and Nationality Act (8 U.S.C. 1184(c)), as amended by section 426(a) of division J of the Consolidated Appropriations Act, 2005 (Public Law 108-447), is amended by adding at the end the following:

``(13)(A) In addition to any other fees authorized by law, the Secretary of Homeland Security shall impose a fraud prevention and detection fee on an employer filing a petition under paragraph (1) for nonimmigrant workers described in section 101(a)(15)(H)(ii)(b).

``(B) The amount of the fee imposed under subparagraph (A) shall be $150.''.

(b) *Use of Fees.*--

(1) FRAUD PREVENTION AND DETECTION ACCOUNT.--Subsection (v) of section 286 of the Immigration and Nationality Act (8 U.S.C. 1356), as added by section 426(b) of division J of the Consolidated Appropriations Act, 2005 (Public Law 108-447), is amended--

(A) in paragraphs (1), (2)(A), (2)(B), (2)(C), and (2)(D) by striking ``H1-B and L'' each place it appears;

(B) in paragraph (1), as amended by subparagraph (A), by striking ``section 214(c)(12)'' and inserting ``paragraph (12) or (13) of section 214(c)'';

(C) in paragraphs (2)(A)(i) and (2)(B), as amended by subparagraph (A), by striking ``(H)(i)'' each place it appears and inserting ``(H)(i), (H)(ii),''; and

(D) in paragraph (2)(D), as amended by subparagraph (A), by inserting before the period at the end ``or for programs and activities to prevent and detect fraud with respect to petitions under paragraph (1) or (2)(A) of section 214(c) to grant an alien nonimmigrant status described in section 101(a)(15)(H)(ii)''.

(2) CONFORMING AMENDMENT.--The heading of such subsection (v) of section 286 is amended by striking ``H1-B and L''.

(c) *Effective Date.*--The amendments made by subsections (a) and (b) shall take effect 14 days after the date of the enactment of this Act and shall apply to filings for a fiscal year after fiscal year 2005.

SEC. 404. SANCTIONS.

(a) *In General.*--Section 214(c) of the Immigration and Nationality Act (8 U.S.C. 1184(c)), as amended by section 403, is further amended by adding at the end the following:

``(14)(A) If the Secretary of Homeland Security finds, after notice and an opportunity for a hearing, a substantial failure to meet any of the conditions of the petition to admit or otherwise provide status to a nonimmigrant worker under section 101(a)(15)(H)(ii)(b) or a willful misrepresentation of a material fact in such petition--

``(i) the Secretary of Homeland Security may, in addition to any other remedy authorized by law, impose such administrative remedies (including civil monetary penalties in an amount not to exceed $10,000 per violation) as the Secretary of Homeland Security determines to be appropriate; and

``(ii) the Secretary of Homeland Security may deny petitions filed with respect to that employer under section 204 or paragraph (1) of this subsection during a period of at least 1 year but not more than 5 years for aliens to be employed by the employer.

``(B) The Secretary of Homeland Security may delegate to the Secretary of Labor, with the agreement of the Secretary of Labor, any of the authority given to the Secretary of Homeland Security under subparagraph (A)(i).

``(C) In determining the level of penalties to be assessed under subparagraph (A), the highest penalties shall be reserved for willful failures to meet any of the conditions of the petition that involve harm to United States workers.

``(D) In this paragraph, the term `substantial failure' means the willful failure to comply with the requirements of this section that constitutes a significant deviation from the terms and conditions of a petition.''.

(b) *Effective Date*.--The amendment made by subsection (a) shall take effect on October 1, 2005.

## SEC. 405. ALLOCATION OF H-2B VISAS OR H-2B NONIMMIGRANT STATUS DURING A FISCAL YEAR.

Section 214(g) of the Immigration and Nationality Act (8 U.S.C. 1184(g)), as amended by section 402, is further amended by adding at the end the following new paragraph:

``(10) The numerical limitations of paragraph (1)(B) shall be allocated for a fiscal year so that the total number of aliens subject to such numerical limits who enter the United States pursuant to a visa or are accorded nonimmigrant status under section 101(a)(15)(H)(ii)(b) during the first 6 months of such fiscal year is not more than 33,000.''.

## SEC. 406. SUBMISSION TO CONGRESS OF INFORMATION REGARDING H-2B NONIMMIGRANTS.

Section 416 of the American Competitiveness and Workforce Improvement Act of 1998 (title IV of division C of Public Law 105-277; 8 U.S.C. 1184 note) is amended--

(1) by striking ``Attorney General'' each place that term appears and inserting ``Secretary of Homeland Security''; and

(2) by adding at the end the following new subsection:

``(d) *Provision of Information.*--

``(1) **SEMIANNUAL NOTIFICATION.**--Beginning not later than March 1, 2006, the Secretary of Homeland Security and the Secretary of State shall notify, on a semiannual basis, the Committees on the Judiciary of the House of Representatives and the Senate of the number of aliens who during the preceding 1-year period--

``(A) were issued visas or otherwise provided nonimmigrant status under section 101(a)(15)(H)(ii)(b) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(15)(H)(ii)(b)); or

``(B) had such a visa or such status be revoked or otherwise terminated.

``(2) **ANNUAL SUBMISSION.**--Beginning in fiscal year 2007, the Secretary of Homeland Security and the Secretary of State shall submit, on an annual basis, to the Committees on the Judiciary of the House of Representatives and the Senate--

``(A) information on the countries of origin of, occupations of, and compensation paid to aliens who were issued visas or otherwise provided nonimmigrant status under section 101(a)(15)(H)(ii)(b) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(15)(H)(ii)(b)) during the previous fiscal year;

[Page: H2836]   *GPO's PDF*

``(B) the number of aliens who had such a visa or such status expire or be revoked or otherwise terminated during each month of such fiscal year; and

``(C) the number of aliens who were provided nonimmigrant status under such section during both such fiscal year and the preceding fiscal year.

``(3) **INFORMATION MAINTAINED BY STATE.**--If the Secretary of Homeland Security determines that information maintained by the Secretary of State is required to make a submission described in paragraph (1) or (2), the Secretary of State shall provide such information to the Secretary of Homeland Security upon request.''.

## SEC. 407. EXEMPTION FROM ADMINISTRATIVE PROCEDURE ACT.

The requirements of chapter 5 of title 5, United States Code (commonly referred to as the ``Administrative Procedure Act'') or any other law relating to rulemaking, information collection or publication in the Federal Register, shall not apply to any action to implement sections 402, 403, and 405 or the amendments made by such sections to the

extent the Secretary Homeland Security, the Secretary of Labor, or the Secretary of State determine that compliance with any such requirement would impede the expeditious implementation of such sections or the amendments made by such sections.

## TITLE V--OTHER CHANGES TO PROVISIONS GOVERNING NONIMMIGRANT AND IMMIGRANT VISAS

### SEC. 501. RECIPROCAL VISAS FOR NATIONALS OF AUSTRALIA.

(a) *In General.*--Section 101(a)(15)(E) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(15)(E)) is amended--

(1) by adding at the end ``or (iii) solely to perform services in a specialty occupation in the United States if the alien is a national of the Commonwealth of Australia and with respect to whom the Secretary of Labor determines and certifies to the Secretary of Homeland Security and the Secretary of State that the intending employer has filed with the Secretary of Labor an attestation under section 212(t)(1);''; and

(2) in clause (i), by striking ``or'' after ``national;''.

(b) *Numerical Limitation to Any Single Foreign State.*--Section 214(g) of such Act (8 U.S.C. 1184(g)), as amended by section 405, is further amended by adding at the end the following new paragraph:

``(11)(A) The Secretary of State may not approve a number of initial applications submitted for aliens described in section 101(a)(15)(E)(iii) that is more than the applicable numerical limitation set out in this paragraph.

``(B) The applicable numerical limitation referred to in subparagraph (A) is 10,500 for each fiscal year.

``(C) The applicable numerical limitation referred to in subparagraph (A) shall only apply to principal aliens and not to the spouses or children of such aliens.''.

(c) *Specialty Occupation Defined.*--Section 214(i)(1) of such Act (8 U.S.C. 1184(i)(1)) is amended by inserting ``, section 101(a)(15)(E)(iii),'' after ``section 101(a)(15)(H)(i)(b)''.

(d) *Attestation.*--Section 212(t) of such Act (8 U.S.C. 1182(t)), as added by section 402(b)(2) of the United States-Chile Free Trade Agreement Implementation Act (Public Law 108-77; 117 Stat. 941), is amended--

(1) by inserting ``or section 101(a)(15)(E)(iii)'' after ``section 101(a)(15)(H)(i)(b1)'' each place it appears; and

(2) in paragraphs (3)(C)(i)(II), (3)(C)(ii)(II), and (3)(C)(iii)(II) by striking ``or 101(a)(15)(H)(i)(b1)'' each place it appears and inserting ``101(a)(15)(H)(i)(b1), or 101(a)(15)(E)(iii)''.

## SEC. 502. VISAS FOR NURSES.

Section 106(d) of the American Competitiveness in the Twenty-first Century Act of 2000 (Public Law 106-313; 8 U.S.C. 1153 note) is amended--

(1) in paragraph (1), by inserting before the period at the end of the second sentence ``and any such visa that is made available due to the difference between the number of employment-based visas that were made available in fiscal year 2001, 2002, 2003, or 2004 and the number of such visas that were actually used in such fiscal year shall be available only to employment-based immigrants (and their family members accompanying or following to join under section 203(d) of such Act (8 U.S.C. 1153(d))) whose immigrant worker petitions were approved based on schedule A, as defined in section 656.5 of title 20, Code of Federal Regulations, as promulgated by the Secretary of Labor'';

(2) in paragraph (2)(A), by striking ``and 2000'' and inserting ``through 2004''; and

(3) in paragraph (2), by amending subparagraph (B) to read as follows:

``(B)(i) REDUCTION.--The number described in subparagraph (A) shall be reduced, for each fiscal year after fiscal year 2001, by the cumulative number of immigrant visas actually used under paragraph (1) for previous fiscal years.

``(ii) MAXIMUM.--The total number of visas actually used under paragraph (1) may not exceed 50,000.''.

**ATTACHMENT B**

IMMIGRATION COURT
JFK FEDERAL BLDG., ROOM 320
BOSTON, MA  02203-0002

In the Matter of

EXTANTUS, JEAN MANOR
        Respondent

Case No.: A78-746-927

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on Sep 18, 2003.
This memorandum is solely for the convenience of the parties.  If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.
[✓] The respondent was ordered removed from the United States to *Haiti* ~~or in the alternative to~~

[ ] Respondent's application for voluntary departure was denied and
    respondent was ordered removed to
    alternative to
[ ] Respondent's application for voluntary departure was granted until
    upon posting a bond in the amount of $ _____
    with an alternate order of removal to
[✓] Respondent's application for asylum was ( ) ~~granted~~ ( ✓)denied
    ~~( )withdrawn.~~
[✓] Respondent's application for withholding of removal was ( ) ~~granted~~
    ( ✓)denied. ~~( )withdrawn.~~
[ ] Respondent's application for cancellation of removal under section
    240A(a) was ( )granted ( )denied ( )withdrawn.
[ ] Respondent's application for cancellation of removal was ( ) granted
    under section 240A(b)(1)    ( ) granted under section 240A(b)(2)
    ( ) denied ( ) withdrawn.  If granted, it was ordered that the
    respondent be issued all appropriate documents necessary to give
    effect to this order.
[ ] Respondent's application for a waiver under section _____ of the INA was
    ( )granted ( )denied ( )withdrawn or ( )other.
[ ] Respondent's application for adjustment of status under section _____
    of the INA was ( )granted ( )denied ( )withdrawn.  If granted, it
    was ordered that respondent be issued all appropriate documents necessary
    to give effect to this order.
[ ] Respondent's status was rescinded under section 246.
[ ] Respondent is admitted to the United States as a _____ until _____.
[ ] As a condition of admission, respondent is to post a $ _____ bond.
[ ] Respondent knowingly filed a frivolous asylum application after proper
    notice.
[ ] Respondent was advised of the limitation on discretionary relief for
    failure to appear as ordered in the Immigration Judge's oral decision.
[ ] Proceedings were terminated
[✓] Other: *Relief under Art III (C) CAT denied.*
    Date: Sep 18, 2003
    Appeal: ~~Waived~~/Reserved    Appeal Due By: *10/20/03*    *Patricia Sheppard*
                                                              PATRICIA SHEPPARD
         *by Respondent*                                      Immigration Judge

AEB

ALIEN NUMBER: 78-746-727                    ALIEN NAME: EXTANTUS, JEAN MANOR

---

CERTIFICATE OF SERVICE

THIS DOCUMENT WAS SERVED BY: MAIL (M)     PERSONAL SERVICE (P)
TO: [ ] ALIEN [ ] ALIEN c/o Custodial Officer [ ] ALIEN's ATT/REP [ ] INS
DATE: ____9/8/05____ BY: COURT STAFF _____
    Attachments: [ ] EOIR-33 [ ] EOIR-28 [ ] Legal Services List [ ] Other

---

Q6